(97 South. 895)

### SOVEREIGN CAMP, W. O. W., v. BALLARD. (3 Div. 420.)

(Court of Appeals of Alabama. May 8, 1923. Rehearing Denied Oct. 16, 1923.)

**1. Appeal and error ⟨⟩761, 1078(1)—Assignments of error not argued or presented in compliance with Supreme Court rule are waived.**

Assignments of error not argued or presented in appellant's original brief with propositions or points and citation of authorities, as required by Supreme Court rule 10 (175 Ala. xviii, 61 South. vii), are waived.

**2. Appeal and error ⟨⟩765—Appellant's supplemental or reply brief not considered where copy was not furnished to appellee's counsel.**

Appellant's supplemental or reply brief, a copy of which was not furnished to appellee's counsel as required by Supreme Court rule 13 (175 Ala. xviii, 61 South. vii), will not be considered.

**3. Appeal and error ⟨⟩761—Statement in appellant's brief held not to comply with Supreme Court rule as to preparation of brief.**

Statement in appellant's brief that "we insist on each separate and several assignment of error, and do not waive any assignment of error," held not to comply with Supreme Court rule 10 (175 Ala. xviii, 61 South. vii), requiring appellant's brief to contain a concise statement of so much of the record as fully presents every error and exception relied on, referring to the pages and lines of the transcript, and to contain under a separate heading of each error relied on separately numbered propositions or points with authorities relied on.

**4. Insurance ⟨⟩753(1)—Payment to society by local clerk authorized to accept payment without payment by member held payment.**

Payment by local clerk to benefit society of amount due from member for reinstatement without having received the money or been authorized to so do by the member constituted payment.

**5. Insurance ⊜⟹761—Local clerk's payment of amount due by suspended member to society and issuance of receipt to member held not to effect a reinstatement without health certificate.**

Where certificate and the constitution and by-laws of a beneficiary society required suspended member to make statement as to his health as condition to reinstatement, and provided that the local clerk had no authority to accept delinquent payment without such statement, the payment to the society by a local clerk from his own funds, of the amount due by a suspended member, without statement by member as to his health, and the issuance of a receipt stating that such requirement was not waived, did not effect a reinstatement, since the clerk, in making payment, acted as the member's agent.

**6. Principal and agent ⊜⟹70—Agent cannot act adversely to principal.**

The law will not permit an agent, acting either for himself or another, to act adversely to his principal.

**7. Insurance ⊜⟹763—Beneficiary society by retention of dues for unreasonable length of time with knowledge of member's failure to comply with condition to reinstatement waives such condition.**

A beneficiary society, by acceptance of amount due from suspended member with knowledge that the local clerk has paid such amount himself, without a written statement by the member as to his health, in violation of the constitution, by-laws, and certificate, and by retaining the money with knowledge of such fact. for an unreasonable time, or so retaining it after acquiring knowledge subsequent to acceptance, waives the member's failure to make such written statement as a condition to reinstatement.

**8. Insurance ⊜⟹763 — Beneficiary society can ratify, after member's death, unauthorized reinstatement by local clerk during member's lifetime.**

A beneficiary society can ratify action of local clerk in reinstating member without statement by the member as to his health by retention of the money for an unreasonable time with knowledge of the facts, though the member has died prior to such ratification, as the reinstatement relates back and dates from the date of payment.

**9. Insurance ⊜⟹763—Beneficiary society held not to have ratified local clerk's unauthorized reinstatement of member.**

Beneficiary society did not ratify unauthorized reinstatement by local clerk by retention of amount which suspended member had owed, on receipt thereof from the local clerk, without knowledge that local clerk had reinstated the member without a statement by the member as to his health and freedom from certain habits, as required by the certificate and constitution of the society.

Appeal from Circuit Court, Lowndes County; A. E. Gamble, Judge.

Action on policy of insurance by Mrs. J. R. Ballard against the Sovereign Camp of the Woodmen of the World. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Certiorari denied by Supreme Court in Ex parte Ballard, 210 Ala. 281, 97 South. 901.

Defendant's fifth rejoinder is as follows:

"(5) Defendant says that it did accept said payments for the September and October, 1918, installment of assessments, but that when same was received from Clark, said local clerk, after the reported death of said Ballard, it retained said money only long enough for it to investigate said claim, and until it received proofs of death; that defendant first learned that Ballard was not in good health in and through said proofs of death, and that as soon as it could consistent with others which were ahead of it said claim was rejected, and the money which had been received by it from said clerk was refunded or returned to plaintiff by and through a refunding check, which check was received by plaintiff, but she would not accept said check, but returned it to defendant, and defendant now brings said check into court and offers it again to plaintiff."

C. H. Roquemore, of Montgomery, for appellant.

The clerk of the local camp was without authority to bind the defendant by a waiver. Sov. Camp v. Gay, 207 Ala. 610, 93 South. 559; Woodmen of the World v. Alford, 206 Ala. 18, 89 South. 528; Woodmen of the World v. Maynor, 206 Ala. 176, 89 South. 750; Sov. Camp v. Jones, 11 Ala. App. 433, 66 South. 834; Sov. Camp v. Allen, 206 Ala. 41, 89 South. 58; Sov. Camp v. Eastis, 206 Ala. 49, 89 South. 63; Hardy v. Sov. Camp, 17 Ala. App. 53, 81 South. 690.

Powell & Hamilton, of Greenville, for appellee.

The acceptance and retention of the Ballard assessments for September and October, 1918, and the reinstatement of Ballard, without requiring a written statement and warranty from him, was a waiver of that condition. Galliher v. State Mut. Co., 150 Ala. 543, 43 South. 833, 124 Am. St. Rep. 83; U. O. G. C. v. Hooser, 160 Ala. 334, 49 South. 354; Supreme Ruler, etc., v. Darwin, 201 Ala. 687, 79 South. 259; Beiser v. Sov. Camp, 199 Ala. 41, 74 South. 235; U. S. L, I. Co. v. Lesser, 126 Ala. 568, 28 South. 646; Sec. Mut. Co. v. Riley, 157 Ala. 553, 47 South. 735.

SAMFORD, J. Defendant is a fraternal order, issuing to its members certificates or policies insuring their lives against death, etc., in accordance with the terms of the certificates, which embrace the constitution and by-laws of the organization. Plaintiff is the beneficiary named in the certificate issued to her son, who was a member of the order, at Plant City, in the state of Florida, and to him, through the local camp at Plant

City, Fla., was issued the certificate sued on in this case. One of the vital conditions named in the certificate was:

"This certificate is issued and accepted subject to all the conditions on the back hereof. The articles of incorporation, and the constitution and laws of the Sovereign Camp of the Woodmen of the World and all amendments to each thereof which may be hereafter made, the application for membership and the medical examination of the member herein named as approved by the Sovereign physician of this society and this certificate shall constitute the agreement between this society and the member, and copies of the same certified by the secretary of the society or corresponding officer shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to the articles of incorporation, Constitution or laws duly made or enacted subsequent to the issuance of this benefit certificate shall bind the member named herein and his beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership, also subject to the by-laws of the camp of which he is a member."

This certificate was signed by the officials of the order and accepted in writing by the member, in which he declared as follows:

"I have read the above certificate No. 44573 of the Sovereign Camp of the Woodmen of the World, and the conditions thereon, and hereby agree to and accept the same as a member of camp No. 74, state of Florida, this the 10th day of July, 1917, and warrant that I am in good health at this time, and that all the requirements of section 58 of the Constitution and Laws of the society have been complied with."

Another condition was that he would pay—

"all assessments and dues that are required of him during the time he shall remain a member of this society and to make such payments at such time, in such manner and in such amount as is required by the constitution and laws of this society now in force or which may hereafter be adopted."

By Section 110 of defendant's constitution the member was required to pay certain assessments by the first day of each month succeeding the issue of the certificate, and, failing to make such payment, the member stands suspended, and during such suspension the certificate is void. Section 116 of the constitution provides for reinstatement as follows:

"Section 116. * * * (b) After the expiration of ten days and within three months from the date of suspension of a suspended member, to reinstate, he must pay to the clerk of his camp all arrearages and dues, and deliver to him a written statement and warranty signed by himself and witnessed, that he is in good health and not addicted to the excessive use of intoxicants or narcotics, as a condition preced-

ent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue.

"(c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and if any of the representations or statements made by said applicant are untrue, then said payments shall not cause his reinstatement not [nor] operate as a waiver of the above conditions."

The member complied with all these requirements to and including August 1, 1918. On September 1 and October 1, 1918, he failed to make the required payments. On October 14th, while the member was ill and in a hospital in Montgomery, Ala., his wife wrote a letter to the clerk of the local camp of defendant at Plant City, Fla., stating the reason why the assessments had not been paid, and notifying the clerk of the member's then ill health and his confinement in the hospital, whereupon the defendant's local clerk, on October 16th, who was charged with the duty of collecting the assessment, and through whom alone payment was provided, issued to the member receipts for the two assessments, and informing him that he was reinstated and in good standing. On October 17th the member died of the illness of which he was confined in the hospital. The member did not comply with that condition of his certificate providing that, in addition to the payment of arrearages, he shall deliver to him (the local clerk) a written statement and warranty signed by himself and witnessed that he is in good health, and not addicted to the excessive use of intoxicants or narcotics, as a condition precedent to reinstatement. Nor could he comply with section 119 of the order, which provides:

"No suspended member shall be reinstated whose health is at the time impaired,"

it being admitted at this time the member was in the hospital sick of a disease from which he died the next day.

The foregoing facts were sufficiently pleaded in count 2 of the complaint, stating the cause of action, and defendant's pleas 1 to 9, both inclusive. Plaintiff replied to defendant's pleas as follows:

"For further replication plaintiff says that, after the failure of the said Lloyd Ballard to pay said monthly installment of assessments for the month of September, 1918, on or by the 1st day of October thereafter, said installment, together with the installment for October, was paid for said Ballard by W. A. Clark, clerk of the camp of which the said Ballard was a member, said payment being made on, to wit, October 16, 1918. At the time said payment was made the said Clark had information that Ballard was ill and in an infirmary, but said Ballard on said date was reinstated as a member of the camp and of the defendant order without being required to furnish a certificate as to good health; that thereafter, on, to wit, November 5, 1918, said installments of assess-

ments were forwarded to defendant's Sovereign Clerk, and a statement was also furnished to him by the clerk of the local camp showing that Ballard had been reinstated on October 16, 1918; that in the matters herein above set out Clark was the authorized agent of the defendant. Prior to November 5, 1918, the defendant order had been duly notified of the death of the said Ballard by the consul commander, banker and clerk of the local camp of which Ballard was a member. This notice was dated October 24, 1918, and was received by the defendant's Sovereign Clerk, John P. Yates, on, to wit, October 29, 1918, and in it was a statement showing that Ballard had died October 17, 1918; that the cause of his death was pneumonia; that it occurred at Camp Sheridan, in Montgomery, Ala.; that Ballard had been suspended on the 1st day of October, 1918, and reinstated on the 16th day of October, 1918; that, after receiving the information hereinabove set out, the defendant, on or about November 12, 1918, received and accepted the installment assessments of the said Ballard for the months of September and October, 1918, and still retains the same. Wherefore plaintiff avers that the defendant ratified the reinstatement of the said Ballard and waived a compliance with the requirements relied on as a defense in said special pleas, and plaintiff is not precluded from recovering by reason of the defense set up in said pleas.

"For further replication to said special pleas, and separately to each of them, plaintiff adopts all of replication 6 down to and including the words, 'defendant, on or about November 12, 1918, received and accepted the installment assessments of the said Ballard for the months of September and October, 1918,' and adding immediately thereafter the following 'That defendant also furnished her with the necessary blanks for the purpose of showing the death of said Ballard, who was her son, and of establishing her claim as beneficiary under the certificate sued on, which said proofs were made out and sent to the defendant, plaintiff being put to time and trouble in doing so, and that the defendant has retained said September and October installments of assessments. Therefore plaintiff avers that defendant waived its right to insist on the defense set up in said pleas, and plaintiff is not precluded thereby from recovering.'"

Demurrers were filed to these pleas, demurrers were overruled, and rejoinders were then filed, to which demurrers were sustained except as to rejoinder 5. Issue was joined on this rejoinder along with the general issue, which was interposed at each step of the pleading. The foregoing sufficiently states the facts in the case made by the pleading, except in so far as it may become necessary to allude to the evidence in a further consideration of the various propositions presented in this appeal.

[1-3] Briefs for appellant were filed on the submission, which, while not strictly complying with Supreme Court rule 10 (175 Ala. xviii, 61 South. vii), will be considered in so far as legal propositions relating to errors assigned are sufficiently argued or presented, and all other assignments of error not so presented in the original brief are waived. The supplemental or reply brief of appellant, since forwarded to this court, will not be considered, it appearing that a copy of same was not furnished appellee's counsel, as is required by Rule 13 (175 Ala. xviii, 61 South. vii).

The statement in a brief for appellant, "We insist on each separate and several assignment of error and do not waive any assignment of error," is not such compliance with Supreme Court rule 10 as to require this court to search through the assignments of error thus alluded to for error on which to base a reversal. East Pratt Coal Co. v. Jones, 16 Ala. App. 130, 75 South. 722.

The first point of moment arises in a consideration of the question as to whether the member to whom the certificate issued was in good standing at the time of his death. It is admitted that the member was in default of the payments due September 1st and October 1st, and that, failing to pay the dues so delinquent on or before October 10th, ipso facto, under the terms of the policy, he became suspended, with only the right of reinstatement. U. O. of G. C. v. Hooser, 160 Ala. 334, 49 South. 354. If he was not reinstated then no recovery can be had on this certificate. On October 14th, after suspension of membership had occurred, the following letter was written:

"W. A. Clark, Clerk, W. O. W., Plant City, Fla.—Dear Sir: Your letter of Oct. 7th, just rec'd by me today. I was drafted the 15th of July. Am here at Camp Sheridan near Montgomery, Ala. I was sent to the hospital Friday night. Have been unable to keep my camp dues paid since August as I only get $8.50 per month, as fifteen (15) dollars is taken out for my wife's allotment and $6.50 for my army life insurance, but as soon as I am able to leave the Base Hospital will give this my earliest attention. Yours very truly, Lloyd Ballard, Co. D, 46th Infantry, Camp Sheridan, Montgomery, Ala."

Giving to the evidence a construction most favorable to the plaintiff, upon receipt of this letter the camp clerk, who was charged with the duty of collecting dues, without demanding a certificate of health, out of his own funds, paid the amount due, sending a receipt therefor to the member on October 16, 1918, which receipt contained the following condition:

"If any of the sums herein receipted for are paid for the purpose of reinstating the Sovereign so paying, the same are received upon the express conditions and agreement that they shall be held in trust for him until the requirements of the laws of the order in relation to reinstatement have been complied with; that the payment and the giving of this receipt shall not be a waiver of such requirements, and that he has no claim upon the order until he has fully complied therewith.

                               "W. A. Clark, Clerk."

These receipts were never received by the member, he having died on October 17th, before their arrival.

[4, 5] The crux of this case is the agency of Clark, the local clerk, and how far, as such agent, he can bind the defendant by his act of issuing the receipts to the insured; for it must be admitted that, in so far as he was authorized, he bound defendant to reinstatement. While there is a line of authorities holding that a stranger, who is under no obligation to pay the debt of another cannot, without the debtor's request or ratification, pay such debt and charge the debtor therewith, our courts, together with other respectable authority, hold that the creditor must receive payment tendered by a third person, and, where such payment is made and the creditor accepts, such payment operates as an extinguishment of the debt so far as the creditor is concerned. McLane v. Miller, 10 Ala. 856; Brewer v. Branch Bank, 24 Ala. 439; Leavitt v. Morrow, 6 Ohio St. 71, 67 Am. Dec. 334; Crumlish's Adm'r v. Central Imp. Co., 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, 45 Am. St. Rep. 872; Gray v. Herman, 75 Wis. 453, 44 N. W. 248, 6 L. R. A. 691. So that when Clark, the local clerk, issued the receipts to the member, the dues were paid, subject to the condition named in the receipts, unless such conditions were waived. If, therefore, Clark made the payment for the member in extinguishment of the amount due, it was made, so far as defendant is concerned, with the condition as expressed in the receipt, that the amount should be held in trust for the member, without waiver on the part of the defendant, until the laws of the order in relation to reinstatement had been complied with. We must hold, therefore, that the issuance of the receipt for the money by Clark, the local clerk, without the certificate of health, was not a waiver on the part of defendant of this requirement in the constitution and by-laws of defendant. The case of U. O. of G. C. v. Hooser, supra, 160 Ala., in passing upon this point, at page 347 (49 South at page 359), proceeds upon the assumption "that the officer or agent who acted for the defendant was clothed with authority, either actual or apparent, to bind the defendant," while in the instant case both by the constitution, by-laws, and the policy, of which the member had notice, and as such the member was bound, specifically stated that such local clerk had no such actual or apparent authority. U. O. of G. C. v. Hooser, 160 Ala. 334, headnote 6, 49 South. 355. There is an expression in the opinion by Denson, J., in the Hooser Case, supra, 160 Ala. 347, 49 South. 359, that:

"Forfeitures may be waived by subordinate lodges or their ministerial officers who are the agents of the Supreme Commandery, *acting within the scope of their authority*." (Italics ours.)

This is the declaration of a correct rule where such subordinate agencies exercise, in some measure, at least, a general agency, as to that part of the condition alleged to be waived. But, where the agency is limited, and the limitation is known to the party claiming the waiver, a different rule would apply. The agent would not then be acting within the scope of his authority if he acted beyond his limitations.

[6] In this case Clark, the clerk of the local camp, when he voluntarily paid to himself, as clerk, the arrearages of Ballard, the member, acted in a dual capacity. As agent for defendant he knew his limitations, and as agent for Ballard he, could only pay the money subject to those limitations. The law will not permit an agent, acting either for himself or another, to act adversely to his principal. In law, as in morals, it may be stated as a principle, to preserve good faith and fair dealing, a man cannot serve two masters, for either he will hate the one and love the other or else he will hold to the one and despise the other. Luke, xvi, 13. The law cannot allow the payment of the arrearages of Ballard by Clark, the local clerk, to himself as clerk without the certificate of health provided by the policy and constitution and by-laws of the order in such sort as to constitute a waiver of the forfeiture of the benefits provided in the policy. To permit this would open the doors wide for fraud and unfaithfulness.

"In all cases, when without the assent of the principal the agent has assumed to act in a double capacity the principal may avoid the transaction at his election." 21 R. C. L. p. 827, note 19.

The action of the court in overruling demurrers to plaintiff's special replications 6 and 7 and in sustaining demurrers to all of defendant's special rejoinders, except rejoinder No. 5, are not insisted on as error in appellant's brief in such manner as to authorize this court to consider these rulings, the omission in appellant's brief being a waiver as to these assignments. This leaves the issues presented by special replications 6 and 7 and special rejoinder 5. This brings us to a consideration, first, of replications 6 and 7. Whether these replications may or may not be subject to some ground of demurrer we do not pass on, that point having been, as we have seen, waived in brief. These replications allege a waiver on the part of defendant, through and by its supreme officers, who, as such officers, and representing the defendant, and with knowledge of the facts, received and retained the money paid for the member, and thereby ratified the act of Clark, the local clerk, in accepting the dues without the certificate of health, although .

the report of the clerk and the receipt of the money did not reach defendant's responsible officers until after the death of the member.

[7] However unauthorized and irregular was or may have been the act of Clark in making the payment of arrearages for Ballard, the defendant could, by its acts and conduct, ratify such unauthorized act. If, with a full knowledge of all the facts, including the fact of a failure on the part of Clark to demand or to receive the certificate of health required by the defendant, knowing at the time that Ballard was sick in a hospital, and was not in physical condition to comply with the condition, the defendant accepted the payment of the money and retained the same for an unreasonable time, or if, after coming into possession of such knowledge, defendant still continued to retain the money or retained it for an unreasonable time, such act would constitute a waiver of the condition. Hardy v. W. O. W., 17 Ala. App. 53, 81 South. 690.

[8] The weight of authority is to the effect that a forfeited contract cannot be reinstated after the member's death. Drum v. Benton, 13 App. D. C. 245; Carlson v. Supreme Council, Am. Leg. of H., 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643; Clark v. Met. Life, 107 Mich. 160, 65 N. W. 1; Smith v. Sov. Camp, W. O. W., 179 Mo. 119, 77 S. W. 862. This rule, however, has no application in the instant case where payment of arrearages and application for reinstatement depend upon ratification of acts done before death. Sov. Camp, W. O. W., v. Grandon, 64 Neb. 39, 89 N. W. 448; Jackson v. N. W. Mu. Relief Ass'n, 78 Wis. 463, 47 N. W. 733. If the act of unauthorized reinstatement by Clark was ratified by the defendant, such ratification and reinstatement relates back and dates from the date of payment (Mu. Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 South. 299, L. R. A. 1918D, 860), and the right to reinstatement depends on the facts as they existed when the payment of arrearages was made.

[9] The replications allege, among other things:

"November 5, 1918, said installments of assessments were forwarded to defendant's Sovereign Clerk, and a statement was also furnished to him by the local camp showing that Ballard had been reinstated on October 16, 1918."

This allegation might have been subject to a demurrer on the ground that, as to reinstatement, the allegation was a conclusion, but, in the absence of demurrer, we must conclude that the allegation was tantamount to saying that the Sovereign Clerk had notice that Ballard had furnished to the local clerk a certificate of health as required by the terms of his policy and had on October 16th paid the arrearages of dues, for, according to the contract of insurance and the law of the order, in this manner only could a reinstatement be binding, unless the reinstatement, being irregular, had with full knowledge of all the facts been ratified by the general officer of the defendant having authority to do so. There is no evidence in this record to sustain an allegation that defendant's sovereign officers had notice of a reinstatement of Ballard, for in fact no such reinstatement ever took place, and, if the sovereign officer had been put in possession of the exact facts, as disclosed by this record, such facts would have shown an ipso facto suspension, and the issuance of receipts for the September 1st and October 1st dues, the amount to be held in trust for Ballard, until he should further comply with his contract for reinstatement by furnishing a certificate as to his good health and freedom from certain habits. The receipt issued by Clark, the local clerk, at the time of the payment of the money, is evidence of the terms upon which the money was paid and received and is being held, and there is no evidence in this record prior to the filing of claim for the death loss that a contrary insistence would be made.

Assuming, as is held in many cases, that the beneficiary succeeds to all the rights of the insured under the policy, such beneficiary would also succeed to the burdens. In this case, under the contract, Ballard would only be entitled to reinstatement upon complying with the condition relative to his health; failing in this he could only demand the amount of money paid, and which under the terms of payment was and is being held in trust for him.

Under the facts in this case we are bound to hold that the only rights to which plaintiff succeeded under the contract is the right to demand the money held in trust by the defendant. Fraser v. Ætna L. Ins. Co., 114 Wis. 510, 90 N. W. 476. As we view this case it becomes necessary to pass upon no other questions.

The affirmative charge should have been given for defendant as requested. For this error the judgment is reversed, and the cause is remanded.

Reversed and remanded.

BRICKEN, P. J., not sitting.

### On Rehearing.

PER CURIAM. On application for rehearing we are asked to hold that an agent for an insurance company, who acts in a limited capacity, which limitations are known to the insured, can, in excess of such limitations and without the request of insured, issue to the insured a receipt without collecting the money for a past-due premium by which, without the knowledge, consent, or ratification of the principal, the insured is reinstated to all the rights theretofore had, under a policy which by its terms had become forfeited, and that, too, at a time when the insured was

known to be sick and in a hospital, and could not comply with the conditions of the receipt. In this case, let it be conceded that the local clerk was the agent of the defendant. By all the evidence this agency was limited, of which limitations the insured had knowledge and was bound. The insured writes the agent admitting his default, stating the fact of illness, but making no payment, no request for extention, or request for reinstatement. The agent, upon receipt of this letter, issues a receipt containing the condition stated in the original opinion. This was an assumption on the part of defendant's agent to act for the insured without the assent of defendant. In all such cases the principal may avoid the transaction at his election. Authorities cited in original opinion. While in the case of Henton v. Sov. Camp, W. O. W., 87 Neb. 552, 127 N. W. 869, 138 Am. St. Rep. 500, it was held that the act of the local clerk, being the agent of defendant, by a receipt of a premium and entering the fact of assured's suspension and reinstatement on the records of the local camp, which facts were reported to the Sovereign Camp, and audited by it, might amount to a waiver, it must be noted that in the Henton Case, supra, the local clerk did not assume to act for the member, but in the line of his agency collected the dues, remitted them to the Sovereign Camp, who retained them without objection, and allowed its local clerk to collect the next month's dues before the death of insured. Demand and acceptance of subsequent assessments or dues by an agent authorized to do so, will estop the insurer from objecting that all the formalities of reinstatement were not complied with. Hoffman v. Supreme Council, A. L. H. (C. C.) 35 Fed. 252. But in this case there was no payment or attempted payment by the insured to Clark. Clark, being an agent of defendant with limited authority, of which the insured had notice in such manner as to be bound, merely issued to insured a receipt by which he (Clark) became liable to pay the amount named therein to this defendant, which he did in his next monthly remittance in November after the death of insured. Assuming, as we have in this opinion, that the issuance of the receipt was in effect a payment of the premium by Clark for the insured to Clark, the clerk, such transaction is bound to come under the rule that a person cannot act as agent for persons having antagonistic interest, and, where an agent of a principal assumes so to act, such principal is not bound until, with full knowledge of all the facts, the principal elects to affirm. Mercantile Mut. Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408; Utica Ins. Co. v. Toledo Ins. Co., 17

Barb. (N. Y.) 132; N. Y. Central Ins. Co. v. Nat. Ins. Co., 20 Barb. (N. Y.) 468; Carr v. Nat. Bank, etc., Co., 167 N. Y. 375, 60 N. E. 649, 82 Am. St. Rep. 725; U. S. R. S. Co. v. Atlantic, etc., R. Co., 34 Ohio St. 450, 32 Am. Rep. 380; Hunter Realty Co. v. Spencer, 21 Okl. 155, 95 Pac. 757, 17 L. R. A. (N. S.) 622. This right of repudiation exists for the benefit of the principal, and for his protection, and he may waive it at his option. If after a full knowledge of all the facts and circumstances he deliberately and freely ratifies the act of the agent, or acquiesces in it for a great length of time, he will be bound by the agent's acts, not by reason of its own inherent force, but from the consideration that he thereby waives the protection secured by the law for his protection, and deals with his agent quoad hoc, discharged of his agency. U. S. Rolling S. Co. v. Atlantic, etc., R. Co., supra. In such a case he is estopped to take a contrary position. But in this case it is shown without conflict that no ratification of the unauthorized act of Clark was ever had by the Supreme officers of the defendant having authority to act in the premises, with full knowledge of the facts. Nor does it appear from the facts of this case, under the congested conditions of the volume of business in defendant's office due to excessive claims, that defendant retained the premium money an unreasonable time for investigation, the premiums being held, under the terms of the receipt, with a willingness at all times to account therefor. Fraser v. Ætna L. Ins. Co., 114 Wis. 510, 90 N. W. 476.

Since the opinion in this case was prepared the Supreme Court, in the case of Sov. Camp, W. O. W., v Eastis, 210 Ala. 29, 96 South. 866, has said:

"At the time of the receipt and inspection of the certificate as to the reinstatement of Eastis by the Sovereign Clerk, said Eastis was dead. [Citing authorities.] The conditions precedent to reinstatement had not been complied with as per provisions of section 117 of the by-laws in evidence. The affirmative charge should have been given for the defendant."

In this case the certificate as to the reinstatement of Ballard was not received by the supreme officers until long after Ballard's death, the condition precedent to reinstatement had not been complied with, and we have seen by the foregoing opinion, under the facts in this case, Clark's act did not waive the filing of the health certificate, and notice to him was not notice to the defendant. The defendant was entitled to the affirmative charge.

The application for rehearing is overruled.