NITSCHE, APPELLANT, *v.* SECURITY BENEFIT ASSOCIATION, RESPONDENT; HOIDA ET AL., INTERVENERS AND RESPONDENTS.

(No. 6,062.)

(Submitted February 18, 1927. Decided March 23, 1927.)

[255 Pac. 1052.]

*Mutual Benefit Insurance—Beneficiaries—Divorced Person Ineligible—Waiver and Estoppel—Appeal and Error—Cross-assignments of Error—When Reviewable.*

Appeal and Error—Cross-assignments of Error—When Reviewable.
　1.  Since the enactment of section 9751, Revised Codes of 1921, the supreme court is required on appeal to review not only the errors assigned by appellant, but the cross-assignment made by respondent if

[78 Mont. 532.]

made to appear in the record by bill of exceptions, and under the doctrine of compensatory error thereby established, the court cannot reverse the judgment for error committed against appellant if the same result would have been attained had the trial court not committed errors against respondent.

Fraternal Life Insurance—What Constitutes Contract.

2. The certificate of life insurance issued by a mutual benefit association working under a lodge system, with the original application, the report of the medical examiner and the constitution and by-laws of the society constitute the contract between it and its member, which contract can be modified only by a subsequent agreement in writing or by executed oral agreement between the original parties thereto.

Same—Divorced Beneficiary Ineligible Under Statute and Contract.

3. Under section 6311, Revised Codes of 1921, payment of death benefits by fraternal life insurance societies on their certificates are confined to husband, wife, relatives by blood, *etc.* The constitution of such a society and the by-laws of a subordinate lodge provided that where husband or wife is designated as beneficiary, divorce should render either ineligible as beneficiary and annul the designation. *Held,* in an action by a husband who had been named in such a certificate as beneficiary of his wife but divorced from her prior to her death, the beneficiary has not a vested interest in the certificate, prior to the death of the member, as he would have under a so-called "Old-line" policy; that his designation as beneficiary lapses upon the happening of the divorce, but that the insurance is not thereby invalidated as to others who may be eligible to receive payment.

Same—Waiver and Estoppel—When Doctrine Inapplicable to Plaintiff.

4. In an action of the nature of the above, where a divorced husband seeks to recover on a life insurance certificate in face of the law prohibiting payment to him, and thus to substitute for the original contract one which the insurer could not have executed in the first instance, the equitable doctrine of waiver and estoppel which may be invoked against forfeiture in certain instances because of conduct of the insurer does not apply.

Same—Defendant Accepting Dues With Knowledge That Plaintiff had Been Divorced—Defendant not Estopped to Refuse Payment—Reason.

5. The fact that defendant after the death of the insured wife accepted payment of dues from plaintiff with knowledge that he had been divorced from her did not estop defendant from declining to make payment to him, since the contract was not invalidated and the insurer had notice that there were children asserting rights as beneficiaries (see par. 3, above) and might have accepted the dues upon the assumption that payment thereof was being made by plaintiff for their benefit.

Same—Assignment of Certain Reason for Rejection of Claim not Bar to Assertion of Others.

6. The assignment of a certain reason for rejecting a claim on an insurance policy does not bar the insurer on the trial of an action to enforce payment from asserting others where the claimant was not misled to his injury by failure to set forth the others in its notice

---

2. See 19 R. C. L. 1265.

of rejection, especially where, after setting forth certain grounds, the notice stated that "for these reasons, among others," the claim was rejected.

Same—Plaintiff not Entitled to Recover not in Position to Question Judgment in Favor of Other Claimants.

7. Since plaintiff's divorce barred his recovery in any event, he will not be heard to question the judgment in favor of his intervening children, on the ground, among others, that they had not made proof of death, that being a matter which only the insurer could but did not raise.

---

[1]    Appeal and Error, 4 C. J., sec. 2598, p. 694, n. 98; sec. 3130, p. 1136, n. 36.

[2].   Contracts, 13 C. J., sec. 610, p. 594, n. 45. Mutual Benefit Insurance, 29 Cyc., p. 68, n. 27, p. 69, n. 35, p. 92, n. 23 New.

[3]    Mutual Benefit Insurance, 29 Cyc., p. 108, n. 16, p. 157, n. 85.

[4]    Mutual Benefit Insurance, 29 Cyc., p. 185, n. 44, 45, p. 186, n. 46 New, p. 194, n. 85.

[5]    Mutual Benefit Insurance, 29 Cyc., p. 195, n. 86 New.

[6].   Insurance, 32 C. J., sec. 636, p. 1354, n. 3. Mutual Benefit Insurance, 29 Cyc., p. 198, n. 98.

[7]    Mutual Benefit Insurance, 29 Cyc., p. 150, n. 44 New.

*Appeal from District Court, Silver Bow County; W. E. Carroll, Judge.*

ACTION by Emil F. Nitsche against the Security Benefit Association; Mrs. Louis Hoida and Roland Nitsche, by Mrs. Louis Hoida, his guardian *ad litem,* interveners. From a judgment in favor of interveners, plaintiff appeals. Judgment affirmed.

*Mr. N. A. Rotering, Mr. W. N. Waugh* and *Mr. John A. Shelton,* for Appellant, submitted an original and a reply brief; *Mr. Shelton* argued the cause orally.

Under the facts of this case a plea of estoppel was available to the plaintiff for the purpose of avoiding a defense on the part of the defendant on the ground that the plaintiff and the insured had become divorced after the issuance of the certificates sued upon. In an action arising in Colorado, in which the society, defendant here, was seeking to defend upon the ground that the beneficiary named in the benefit certificate sued upon could not recover by reason of the fact that she had procured a divorce from her husband, and was, as the society

in that case contended, thereby precluded from recovering the benefits, it was held that the defendant by receiving the payment of dues with knowledge of the divorce was estopped from defending upon that ground. (*Security Benefit Assn.* v. *Verdery*, 71 Colo. 150, 204 Pac. 895.)

The contention will doubtless be that the defendant did not receive payments of dues with knowledge of the divorce and that it had no knowledge that such payments were made by the beneficiary. Our contention is that knowledge on the part of the district deputy, Skinner, exercising within his district many of the powers of the president, was knowledge on the part of the defendant. (*Golding* v. *Modern Woodmen*, 213 Mo. App. 171, 250 S. W. 933; 29 Cyc. 185, 186, 189.)

The local council in receiving the dues paid by Nitsche was the agent of the defendant acting within the scope of its authority and as such its knowledge was the knowledge of its principal, the defendant. (*Davis* v. *National Council*, 196 Mo. App. 485, 196 S. W. 97.) It has been quite uniformly held that the receipt of a single payment of monthly dues, though paid after the death of the insured, if received with knowledge of the circumstances relied upon as defeating a right of recovery, is sufficient to create an estoppel (*Supreme Tent* v. *Volkert*, 25 Ind. App. 627, 57 N. E. 203) ; also that the retention of dues after knowledge of the facts upon which the society would be entitled to defend the suit estops the society to defend upon that ground. (*Sovereign Camp* v. *Ballard*, 19 Ala. App. 411, 97 South. 895; *Security Benefit Assn.* v. *Verdery, supra; Fordyce* v. *Modern Woodmen*, 129 Wash. 364, 225 Pac. 434; *Rantin* v. *Union*, 105 Kan. 687, 185 Pac. 729.)

Can the interveners assert any right to the payment of death benefits under the facts of this case? Looking at the rights of the respective parties purely from a contractual standpoint the question is: Can the interveners be heard to object to the making of any contract which the defendant may see fit to make or to its changing any contract by it previously made in any way it may see fit?

The general rule is stated in 29 Cyc. 105, in the following language: "And even where by statute, by the common law, or by the charter or laws of the society restrictions are placed on the right to designate beneficiaries, it is generally held that no one but the society can question the eligibility of the person designated, and that its right to object may be lost by estoppel or waiver." The cases on the subject are collected in notes 12 and 13, pages 105 and 106 of 29 Cyc. To them may be added the following: *Gristy* v. *Hudgens,* 23 Ariz. 339, 203 Pac. 569; *Royal Arcanum* v. *Churlo,* 263 Fed. 755; *Woodmen of the World* v. *Muth,* 91 N. J. Eq. 460, 109 Atl. 853. Upon the same principle it may be held that notwithstanding such restrictions in the constitution and laws with reference to the designation of beneficiaries, the society may, by special contract, recognize as valid the designation of a person ineligible under the terms of its constitution and laws. From 29 Cyc. 109, we quote the following: "However, it has been held that the society may, by special contract, recognize as valid the designation of a person ineligible under the terms of its constitution and by-laws."

*Mr. J. A. Poore,* for Respondent, Security Benefit Association, submitted a brief and argued the cause orally.

Under a contract similar to the ones here sued on, divorce renders the beneficiary ineligible, and he cannot recover upon such a contract, even though named as beneficiary. (*Dahlin* v. *Knights of Modern Maccabees,* 151 Mich. 644, 115 N. W. 975; *Knights of Maccabees of the World* v. *Brown,* 186 Mich. 284, 152 N. W. 1085; *Modern Woodmen of America* v. *Patton,* 229 Mich. 62, 201 N. W. 225; *Johnson* v. *Grand Lodge, A. O. U. W.,* 91 Kan. 314, 50 L. R. A. (n. s.) 461, 137 Pac. 1190; *Williamson* v. *Modern Woodmen of America* (Tex. Civ. App.), 237 S. W. 339; *Schonfield* v. *Turner,* 75 Tex. 324, 7 L. R. A. 189, 12 S. W. 626; *Dittmaier* v. *Supreme Conclave,* 135 Md. 312, 108 Atl. 794; *Lawson* v. *United Benevo-*

*lent Assn.* (Tex. Civ. App.), 185 S. W. 976; *Royal League* v. *Kasey*, 144 Ill. App. 1; *Kirkpatrick* v. *Modern Woodmen*, 103 Ill. App. 468; *Norwegian Old People's Home* v. *Wilson*, 176 Ill. 94, 52 N. E. 41; *Sea* v. *Conrad*, 155 Ky. 51, Ann. Cas. 1915C, 318, 47 L. R. A. (n. s.) 1074, 159 S. W. 622; *Green* v. *Green*, 147 Ky. 608, Ann. Cas. 1913D, 683, 39 L. R. A. (n. s.) 370, 144 S. W. 1073; *Green* v. *Knights & Ladies of Security*, 147 Ky. 614, 144 S. W. 1076; *Tyler* v. *Odd Fellows' Mut. Relief Assn.*, 145 Mass. 134, 13 N. E. 360; *Knights of Columbus* v. *Rowe*, 70 Conn. 545, 40 Atl. 451; *Larkin* v. *Knights of Columbus*, 188 Mass. 22, 73 N. E. 850; *Baggerly* v. *Supreme Tribe of Ben Hur* (Ind. App.), 153 N. E. 805.)

The beneficiary in such a case as this has no vested interest in the beneficiary certificate prior to the death of the member. The contract speaks in reference to the beneficiary as of the time of the death of the member. (Sec. 6311, Rev. Codes 1921; *Order of Scottish Clans* v. *Reich*, 90 Conn. 511, 97 Atl. 863; *Ancient Order of Pilgrims* v. *Price* (Tex. Civ. App.), 274 S. W. 1019; *Mathieu* v. *Mathieu*, 112 Md. 625, 77 Atl. 112; *Vawter* v. *Purdy*, 29 Cal. App. 623, 157 Pac. 556; *Attorney General* v. *Supreme Council A. L. H.*, 206 Mass. 168, 92 N. E. 140; *Select Knights of America* v. *Beaty*, 224 Ill. 346, 8 Ann. Cas. 160, 8 L. R. A. (n. s.) 1124, 79 N. E. 565; *Townsend* v. *Fidelity & Casualty Co.*, 163 Iowa, 713, L. R. A. 1915A, 109, 144 N. W. 574; *Supreme Council Royal Arcanum* v. *Behrend*, 247 U. S. 394, 1 A. L. R. 966, 62 L. Ed. 1182, 38 Sup. Ct. Rep. 522; *National Union* v. *Keefe*, 172 Ill. App. 101, 263 Ill. 453, Ann. Cas. 1915C, 271, 105 N. E. 319; *Murphy* v. *Nowak*, 223 Ill. 301, 7 L. R. A. (n. s.) 393, 79 N. E. 112; *Hodalski* v. *Hodalski*, 181 Ill. App. 158; *Supreme Lodge K. & L. of Honor* v. *Menkhausen*, 106 Ill. App. 665, 209 Ill. 277, 101 Am. St. Rep. 239, 65 L. R. A. 508, 70 N. E. 567; *Knights of Columbus* v. *Rowe*, 70 Conn. 545, 40 Atl. 451.)

The fact that the beneficiary paid the premiums gave him no greater right than if the insured had paid them. (*Quist* v. *Western etc. Life Ins. Co.*, 219 Mich. 406, 189 N. W. 49.)

And knowledge of the local council, its officers and agents, that the beneficiary is not within the eligible class does not amount to waiver. (*District Grand Lodge* v. *Morris*, 26 Ga. App. 371, 106 S. E. 188; *Callahan* v. *Switchmen's Union*, 177 N. Y. Supp. 351.)

Mr. Skinner's powers and duties as district deputy are prescribed by the constitution and laws of the defendant society, with which plaintiff was familiar, and where one deals with an agent, having notice of the restrictions on the agent's power, he is bound by such limitations and may not insist on a contract which he knows is in excess of the power conferred. (*Robinson* v. *Brotherhood Locomotive Firemen*, 170 N. C. 545, 87 S. E. 537.)

It is generally held that the assigning of a particular cause or reason for rejection of an insurance claim does not bar the insurer from setting up on the trial other defenses not mentioned in the notice of rejection. (*Weston* v. *State Mutual Life Assur. Soc.*, 234 Ill. 492, 84 N. E. 1073; *Eaton* v. *Western Life Indemnity Co.* (Ill. App.), 48 Nat. Corp. Rep. 278; *Order of United Com. Travelers* v. *Boaz*, 27 Colo. App. 423, 150 Pac. 822; *Woodmen of the World* v. *Maynor*, 206 Ala. 176, 89 South. 750; *Michigan Sav. & Loan Assn.* v. *Missouri, etc.*, 73 Mo. App. 161; *Volunteer State Life Ins. Co.* v. *McGinnes*, 29 Ga. App. 370, 115 S. E. 287; *Supreme Tent K. M. W.* v. *Stensland*, 206 Ill. 124, 99 Am. St. Rep. 137, 68 N. E. 1098; *Bailey* v. *First Nat. F. Ins. Co.*, 18 Ga. App. 213, 89 S. E. 80; 33 C. J. 35; *Devens* v. *Mechanics' Ins. Co.*, 83 N. Y. 168; *Hubbard* v. *Mutual Reserve Fund Life Assn.*, 80 Fed. 681; *Hart* v. *Fraternal Alliance*, 108 Wis. 490, 84 N. W. 851; Joyce on Law of Insurance, 2d ed., sec. 3731; Bacon on Life and Accident Ins., 4th ed., sec. 610.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by plaintiff from a judgment against both the plaintiff and defendant and in favor of the interveners and

from an order, made after judgment, authorizing the guardian to compromise and settle the judgment in favor of the minor.

The defendant association is a mutual benefit society, without capital stock, conducted for the benefit of members without profit, having a lodge system and ritualistic form of work; it is a foreign corporation duly licensed and authorized to do business in this state and has a subordinate council in Butte, known as "Pioneer Council No. 1050."

In 1916 Lillian M. Nitsche became a member of the society and had issued to her a beneficiary certificate which named Emil F. Nitsche, her husband, as beneficiary and provided that the society would pay to the beneficiary the sum of $2,000 on the death of the member, provided all requirements and conditions of the contract had been complied with. In 1922 Lillian M. Nitsche secured a second certificate in like amount and in which plaintiff was likewise named as beneficiary. These certificates made the constitution and by-laws of the society a part of the contract.

Article VII, section 1, of the constitution declares that "the payment of death benefits shall be confined to wife, husband, * * * , children * * * or a person or persons dependent upon the member," and "in case a husband or wife is designated as beneficiary and subsequent thereto becomes divorced from the member such divorce shall render either of the parties ineligible as a beneficiary and shall annul the designation."

By-laws, section 81a: "No payment shall be made upon any beneficiary certificate to any person who does not bear the required relationship at the time of the member's death."

By-laws, section 120a: "No officer of this association nor any Local Council officer, or member thereof, is authorized to waive any of the provisions of the laws of this association which relate to the contract between the member and the association; * * * . Neither shall any knowledge or information obtained by or notice to any subordinate Council or officer or member thereof, or by or to any other persons, be held or con-

strued to be knowledge or notice to the National Council or the officers thereof, until said information or notice to be given in writing to the National secretary of the association.'' And the contract itself provides that ''neither the subordinate Council or any officer thereof, or any officer of the society, has any power to waive any of the provisions or conditions relating to this contract.''

Under the constitution and by-laws of the society, dues are payable monthly to the ''Financier'' of the subordinate lodge, and during all of the time with which we are here concerned, the plaintiff was the ''financier'' of ''Pioneer Council No. 1050.''

Under an agreement with his wife, plaintiff paid all dues for the member to himself as such financier. On March 26, 1923, plaintiff secured an absolute divorce from Lillian M. Nitsche, who thereafter removed to Chicago, where she died on November 3, 1923, leaving surviving her a daughter, Mrs. Hoida, and an infant son, Roland Nitsche. On November 26, 1923, plaintiff paid to himself as financier, and forwarded to the National Council, the monthly dues on the two policies. Prior to the receipt of these dues the society had been advised of the divorce as well as the death of Lillian M. Nitsche, by letter written by Mrs. Hoida on November 11 and received by the society on November 13, 1923. In this letter, after giving the date of the divorce which she stated had, in her opinion, ''severed all relationship between her and him,'' she advised the society that plaintiff had still kept the policy and kept up the premiums, and that as a child of the member she would like to see if she could not ''get the money to pay her expense.''

The required proofs of death were forwarded to the National Secretary on November 26 and received on the 30th. They contain a certificate by Nitsche, as ''Financier'' of Pioneer Council 1050, in which it is stated that ''Emil F. Nitsche, * * * husband,'' is the beneficiary, and an affidavit by plaintiff personally in which he swears that he is the surviving husband of the deceased member and her beneficiary. The

claims on both certificates were rejected by the National Council on the ground of misrepresentations in the applications "and upon other grounds," and notice thereof sent to both Nitsche and Mrs. Hoida; and thereupon plaintiff commenced action by the filing of his complaint in which he set up the two certificates in separate causes of action, alleged compliance with all the conditions of the contract, death and proof of death, the contract for payment to him of the amount of the policy and nonpayment.

By answer, the defendant joined issue as to liability generally and set up several special defenses, among them that, under the contract, the constitution and by-laws of the society, plaintiff was not entitled to payment by reason of the divorce from the insured.

Replying, the plaintiff admitted all of the allegations of such affirmative defense and alleged that shortly after the decree of divorce was entered, the insured requested plaintiff to keep the policy and keep up the payments, and that plaintiff notified and informed the "defendant, its duly accredited officers and agents" of the divorce, and inquired of them what effect it would have upon the policies, and was advised that it would have none and to continue to pay the dues; that the dues were thereafter paid by plaintiff and accepted by defendant with full knowledge of the facts, and that defendant waived the condition and is estopped from asserting that the divorce barred plaintiff's right of recovery.

The interveners set up the divorce and the provisions of the constitution and by-laws as a bar to plaintiff's right to recover under the contracts, and alleged that they, as children of the member, were entitled to the benefits. The issues joined between them and the defendant are not material here, as the defendant is not now contesting the claims of the interveners.

The cause was called for trial in March, 1926, and a jury impaneled, whereupon the defendant objected to the introduction of any evidence on the ground that plaintiff was not entitled to recover on any theory under the pleadings. The

objection was overruled. Plaintiff contented himself with formal proof of the allegations of his complaint, without reference to the alleged waiver and estoppel. On cross-examination he stated that he had been a benefit member of the society since 1916 and an officer of the society and financier of the local lodge from 1919 to 1924; that as a member he received a copy of the constitution and by-laws and as such officer he continually had copies in his possession. He further stated that "in reality" he was not the husband of Lillian M. Nitsche at the time of her death, saying: "I was divorced. I was not related to her in any way at the time of her death." On redirect he stated that he would refer to the constitution and by-laws on matters coming up in the lodge, but otherwise he had not read them; that "I did not know anything about the clause in it with reference to divorce." Plaintiff rested.

Defendant moved for judgment of nonsuit upon the alleged insufficiency of the complaint and of the proof, and upon the ground that under the laws of this state and under the constitution and by-laws of the society, payments of death benefits are confined to husband or wife or certain blood relatives, and that, as plaintiff admitted in the pleadings that he was divorced from the member and at the time of her death was neither related to nor her husband, and that plaintiff, in the reply filed, sought to avoid this situation by allegations of an agreement between himself and the member, but introduced no evidence to support those allegations. The motion was denied and thereupon the interveners introduced evidence on their behalf which in nowise aided the showing made by the plaintiff, but, on the contrary, contained statements to the effect that the association never advised plaintiff as to the effect the divorce would have on his rights or to continue making the payments, and that the association received no notice of the divorce until after the death of Mrs. Nitsche, or about November 13, 1923, and had no knowledge as to who paid the dues of the member. It was later shown that this testimony referred to the National Council and that the officers at head-

quarters could not know what took place in the subordinate lodges. The witness, the National Secretary, testified, however, that his department was the proper one to handle such inquiries as were mentioned and received none.

At the close of the interveners' case the defendant renewed its motion for nonsuit against plaintiff, which motion was denied, and thereupon defendant announced that it would stand upon its motion as to the plaintiff and would introduce no evidence in the case as against him, but would permit the record as between the plaintiff and defendant to stand as made. It then moved the court to direct a verdict for the defendant and against the plaintiff, the motion being based on the same grounds as the motion for nonsuit, which motion was denied. The defendant then offered evidence with the preliminary statement that it was offered solely against the interveners, and that it would object to the plaintiff taking any further part in the trial, on which statement the court announced that it would reserve ruling, with leave to renew the motion later. This position was adhered to throughout the remainder of the trial, the defendant objecting to all testimony on the part of the plaintiff not directed to the testimony on the part of the interveners.

Plaintiff was recalled in rebuttal, when the defendant renewed its objection, stating that the plaintiff closed his case before the defendant offered any evidence and that defendant announced that it would, and did, stand upon its motion for nonsuit and motion for directed verdict and offered no evidence in refutation of plaintiff's case as made, and that there is now no evidence before the court for the plaintiff to rebut, and that any evidence now offered by plaintiff would not be rebuttal evidence in any sense of the word. The objection was overruled and the plaintiff permitted to testify that the handwriting on the application of Lillian M. Nitsche was that of James Skinner, district manager of the society at Butte. The witness was asked to state the duties of such an officer and, on objection that the question did not call for the best evidence

on the subject, as well as the former objection, the court stated
to counsel for the defendant that he would be permitted to
examine the witness on the subject without reference to his
position taken, but counsel refused to recede from his position
that any evidence from plaintiff on the subject was inadmissible.
The witness stated that the district manager was "over" sub-
ordinate councils in Butte; that he solicited and took applica-
tions, had the right to revoke charters and install officers of
subordinate councils. The witness then testified as to what
took place between Skinner and Lillian M. Nitsche at the time
the application was made, and then testified to paying the dues
under agreement with the member, and, over the objection of
defendant, he stated that he had a conversation with Skinner
immediately after the divorce was granted in which he asked
Skinner, "What am I to do about those premiums? What do
you think?" to which Skinner replied: "If I was you I keep
on paying; they have to pay you"; and that but for this state-
ment made by Skinner, he would not have paid the premiums
after the divorce.

Skinner was called by defendant in rebuttal of testimony on
behalf of the interveners. After his examination was com-
pleted, the court called his attention to the statement made by
plaintiff concerning the above conversation, whereupon the
witness stated: "I did not have such a conversation."

At the close of all the testimony defendant renewed its
motion for a directed verdict against plaintiff, which motion
was overruled. The cause was submitted to the jury and a
verdict returned in favor of the interveners and against both
the plaintiff and the defendant, and judgment was duly entered
thereon.

Plaintiff has made numerous assignments of error which it
is not necessary to set out; the questions raised and argued
thereunder will sufficiently appear hereafter.

The defendant, the only respondent here, has in effect made
cross-assignments of error, based on the court's action in over-
ruling its demurrer to the reply, in denying motion for directed

verdict, and in permitting the plaintiff to testify concerning the alleged acts constituting waiver and estoppel.  The rulings complained of by the defendant are all set out in the record, with the objections and exceptions properly made and reserved.

1. Counsel for plaintiff, in a reply brief filed, contend that [1] the respondent in any case appealed cannot be heard on such matters, as "the appellant is the only one entitled to make assignments of error, and it is only the errors assigned by the appellant which should be considered."  In support of this contention they cite a number of our cases decided prior to 1907.  These cases state the correct rule in the absence of a statute authorizing cross-assignments of error.  (4 C. J. 694.) This authority was given in this state in 1907 by the enactment now appearing as section 9751, Revised Codes of 1921.  "This section requires the supreme court to review the errors made, not only against the appellant, but also those made in his favor, if they are made to appear in the record by bill of exceptions, and prohibits the reversal of the judgment upon any error complained of by the appellant, if but for the error against the respondent, the result of the trial would have been the same."  (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

The question of the correctness of the rulings against the defendant society is, therefore, properly before us and, under the doctrine of compensatory error applicable under the above section, even though we find that the court erred in the particulars pointed out by the plaintiff, we cannot reverse the judgment if we further find from the record that "the same result would have been attained had such trial court not committed errors against the respondent."  · (Sec. 9751, above.)

Conceding, then, that there is merit in certain of the assignments made by the plaintiff, did the court err in overruling the defendant's demurrer to the reply alleging the agreement between the insured and the beneficiary, the statement and advice of officers of the society and the receipt of dues with full knowledge of the divorce, as constituting a waiver and estop-

pel; and in overruling the motions for nonsuit and directed verdict? In order to resolve these questions we must first determine the situation of the parties under the law and under the contract of insurance.

2. Under the laws of this state, as well as under the constitution and by-laws of the defendant society, the payment of death benefits by such an association must be confined to "wife, husband, relative by blood," *etc.*, "and no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of the said member," * * * . (Sec. 6311, Rev. Codes 1921.)

The certificate issued, with the original application, the report [2] of the medical examination and the constitution and by-laws of the society constitute the contract between the society and its member (sec. 6313, Rev. Codes 1921; *Kennedy* v. *Grand Fraternity,* 36 Mont. 325, 25 L. R. A. (n. s.) 78, 92 Pac. 971; *Osborne* v. *Supreme Lodge,* 69 Mont. 361, 222 Pac. 456), which could be modified only by a subsequent agreement in writing or executed oral agreement between the original parties thereto (*Hurley* v. *Great Falls Baseball Assn.,* 59 Mont. 21, 195 Pac. 559; sec. 7569, Rev. Codes 1921), while an attempted change by one party without the consent of the other constitutes spoliation, and the contract stands as originally made. (*Smith* v. *Barnes,* 51 Mont. 202, Ann. Cas. 1917D, 330, 149 Pac. 963.)

3. Under the statutes and the constitution and by-laws of [3] the society above referred to, the contract speaks in reference to the beneficiary as of the time of death of the insured; it differs materially from a policy in an "old-line" insurance company (*Attorney General* v. *Supreme Council,* 206 Mass. 169, 92 N. E. 140; *Order of Scottish Clans* v. *Reich,* 90 Conn. 511, 97 Atl. 863; *Mathieu* v. *Mathieu,* 112 Md. 625, 77 Atl. 112). Here by operation of law, rather than by agreement of the parties, divorce terminates the inchoate right in expectancy of the beneficiary named in the contract, for thereafter such person is but a stranger and not within either of the classes declared eligible by law and by the contract, and

annuls the designation of such person as a beneficiary as of the date of the divorce and such person has no right under the contract at the time it calls for payment. (*Dahlin* v. *Knights, etc.,* 151 Mich. 644, 115 N. W. 975; *Johnson* v. *Grand Lodge,* 91 Kan. 314, 50 L. R. A. (n. s.) 461, 137 Pac. 1190; *Sea* v. *Conrad,* 155 Ky. 51, Ann. Cas. 1915C, 318, 47 L. R. A. (n. s.) 1074, 159 S. W. 922.) This effect is tersely and graphically defined in *Order* v. *Koster,* 55 Mo. App. 186, as follows: ''On the death of H. H. Koster, the certificate, speaking for the first time, called for his wife, and there was none to answer.''

It must be remembered that the person thus cut off from such expectancy could not thereafter be lawfully designated a beneficiary, for the law forbids payment to one not within one of the classes mentioned; but the annulling of the designation does not invalidate the insurance, although the policy may lapse for want of an eligible beneficiary, either substituted by the member or by the laws of the order. (*Order* v. *Koster,* above.)

There is no question of the lapsing of the policy here, as the court found that the children of the member were entitled to recover and the insurer is not now contesting their right, and it is held that the policy will not lapse for lack of a designated beneficiary where there are persons eligible, but the payment will be held in trust for those who are eligible. (*Supreme Lodge* v. *Menkhausen,* 106 Ill. App. 665, 209 Ill. 277, 101 Am. St. Rep. 239, 65 L. R. A. 508, 70 N. E. 567; *Schmidt* v. *Northern etc. Assn.,* 112 Iowa, 41, 84 Am. St. Rep. 323, 51 L. R. A. 141, 83 N. W. 800; *Chicago Guaranty Fund* v. *Wheeler,* 79 Ill. App. 241; *Caudell* v. *Woodward,* 15 Ky. Law Rep. 63; *Lister* v. *Lister,* 73 Mo. App. 99; *Schonfield* v. *Turner,* 75 Tex. 324, 7 L. R. A. 189, 12 S. W. 626; *Grand Lodge* v. *Connolly,* 58 N. J. Eq. 180, 43 Atl. 286.)

The distinction between those cases wherein the insured by his acts or omissions gives the insurer an opportunity to de-[4] clare the policy itself void and all rights of the insured thereunder forfeited and thereafter by its conduct induces the insured to believe that his policy is still in force and to

pay premiums or dues which it thereafter accepts, and cases such as this wherein the contract is not affected, the policy does not lapse and only the rights in expectancy of the beneficiary, who is not a party to the contract, must be borne in mind.

In the first class of cases the equitable doctrine of waiver and estoppel applies; thus the insurer may, either expressly or by its conduct and particularly by the acceptance of dues with full knowledge of the default, waive the forfeiture or be estopped from asserting it, as, for example, where it issues a policy on a defective application (*Golding* v. *Modern Woodmen,* 213 Mo. App. 171, 250 S. W. 933), or where the insured has been delinquent in the payment of dues and they are thereafter accepted (*Davis* v. *National Council,* 196 Mo. App. 485, 196 N. W. 97; *Sovereign Camp* v. *Ballard,* 19 Ala. App. 411, 97 South. 895; *Rantin* v. *Union,* 105 Kan. 687, 185 Pac. 729), or where the insured has violated an inhibition in the contract, as engaging in the liquor business (*Supreme Tent* v. *Volkert,* 25 Ind. App. 627, 57 N. E. 203).

In the latter class of cases the doctrine that a forfeiture or a condition of forfeiture may be waived does not apply; the plaintiff in such an action is not seeking to avoid a forfeiture of his contract or the contract of the insured, but is seeking to substitute a new and different contract which is in contradiction of the terms of the original contract. (*McCoy* v. *Northwestern Mutual Relief Assn.,* 92 Wis. 577, 47 L. R. A. 681, 66 N. W. 697.) In the *McCoy Case* it is said: "To illustrate the principle here laid down, a policy of insurance against loss by fire cannot have ingrafted upon or added to it, by way of estoppel or waiver, provisions for insurance against loss by any other causes; and no more can a policy of life insurance, expressly limited to payment of a sum of money in the event of death from causes other than suicide or self-destruction, be broadened out by the application of the law of waiver or estoppel so as to cover the cause excluded under the contract."

Here the attempt to vary the terms of the written contract by the application of the doctrine of waiver and estoppel not only violates the express provisions of the contract, but seeks to substitute therefor a contract which is prohibited by law and which the insurer could not have executed in the first instance; accordingly it is held in construing like contracts under statutes similar to our own that, regardless of the agreement between the insured and the beneficiary named, the possession of the certificate and payment of dues by the beneficiary named, and the knowledge of the insurer, a divorced wife cannot recover on a mutual benefit insurance policy in the face of the law declaring her ineligible at the time of the death of the insured, if there are persons eligible to take. (*Schiller Bund* v. *Knack*, 184 Mich. 95, 150 N. W. 337; *Knights of Maccabees* v. *Brown*, 186 Mich. 284, 152 N. W. 1085; *Quist* v. *Western Assn.*, 219 Mich. 406, 189 N. W. 49; *Baggerly* v. *Supreme Tribe of Ben Hur* (Ind. 1926), 153 N. E. 805; *Kirkpatrick* v. *Modern Woodmen*, 103 Ill. App. 468; *Ferra* v. *Braman*, 171 Ind. 529, 86 N. E. 843, so holding in principle.)

Counsel for plaintiff have cited *Security Assn.* v. *Verdery*, 71 Colo. 150, 20 Pac. 895, and *Fordyce* v. *Modern Woodmen*, 129 Wash. 364, 225 Pac. 343, in support of their contention that there was a waiver and estoppel. But, owing to the dissimilarity in fact conditions, these cases are neither directly in point nor persuasive.

4. As to the acceptance of dues for the month in which the insured died, after notice of the divorce, it must be remembered [5] that the divorce did not affect the validity of the contract and that the insurer then had notice also that there were eligible persons asserting rights, and that such payment, by someone, was necessary to avoid a default independent of the divorce, and the insurer was justified in accepting the dues for that purpose; it might well have assumed that the father was paying the dues for the benefit of his children, one of whom was of tender years.

5. It is alleged and here asserted that, as the claim was rejected on other grounds, the society is estopped from now [6] contesting on the ground of the divorce; but the notice of rejection recited certain reasons therefor, and then notified both plaintiff and Mrs. Hoida that "for these reasons, among others, as said above, the claim was rejected."

The divorce would be no ground for rejection of the claim of Mrs. Hoida, and as pointed out above, merely annulled the designation of plaintiff as a beneficiary; under the circumstances the form of the notice did not bar the defense made. "An insurance company is not restricted in its defense in an action on a policy, to the reasons assigned in its refusal to pay, if it does not appear that the plaintiff has been misled or influenced to his injury by the omission or failure to set forth other reasons." (*Weston* v. *State Mutual Society,* 234 Ill. 492, 84 N. E. 1073; 5 Joyce on Insurance, 2d ed., sec. 3731; 19 Am. & Eng. Ency. of Law, 106, and cases cited.)

6. Plaintiff contends that the judgment should be reversed for the reason that the interveners, not having made proof [7] of death and for other reasons, were not entitled to recover. This is a matter which only the insurer could raise (*Knights of Maccabees* v. *Brown,* above), and, as plaintiff could not recover in any event, he should not be heard to question the judgment in favor of his children, which the insurer is not now contesting.

Disregarding all former rulings against defendant, it is apparent from the record and from the foregoing discussion that, at the close of all of the evidence, the court should have granted defendant's motion for a directed verdict against the plaintiff, and but for this error committed against defendant, the judgment, as to the plaintiff, would have been the same as the judgment entered on the verdict.

7. Under the circumstances it is immaterial as to whether or not the court properly instructed the jury on the plaintiff's theory of the case, and specifications of error as to instructions need not be considered.

We have examined all of plaintiff's specifications and find no prejudicial error in the record not compensated by the error committed in his favor.

For the reasons stated the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.